THE PEOPLE *ex rel.* J. W. Davidson, Treasurer,

*v.*

L. B. COLE *et al.*

*Filed at Springfield April 5, 1889.*

1.  DRAINAGE LAW—*omitting lands from assessment.*  At the time of the organization of a drainage district under the act of 1879, an assessment of nearly $5000 was levied on the lands of the district.  After the act was amended in 1885, the commissioners made a new classification of the lands under section 21 of the amendatory act, and levied a new assessment of $5000, and also an additional assessment of $2000, to be paid in two installments.  At the time of making this levy, the commissioners credited certain lands with the full amount levied against them, so as to relieve them entirely from the levy, on the ground they were not benefited :  *Held,* that this was the same as to wholly omit to assess the lands so credited, and that such action rendered the whole assessment void.

2.  Drainage commissioners have no power to release lands within the district of their proportion of the assessment based on the last classification.  Both the letter and spirit of the statute require that the burdens of the district shall be apportioned on the basis of a classification of lands in the district, which each owner had an opportunity to contest.

3.  SAME — *re-classification of lands — notice to owner.*  Upon every classification of lands in a drainage district each land owner has an interest, and in order that he may be protected in that interest, he is entitled to notice of the "time when and the place where" the commissioners will meet to hear any and all objections that may be made to the classification, and if dissatisfied with the decision of the commissioners, he is given an appeal to three supervisors.

APPEAL from the County Court of Champaign county; the Hon. JAMES W. LANGLEY, Judge, presiding.

Mr. T. J. ROTH, and Messrs. RAY & SLAUSON, for the appellant :

Appellees, by their appearance in the county court and going to trial on the merits of the objections filed, admitted the *prima facie* right of appellant to recover judgment against their lands.   *Mix* v. *People,* 106 Ill. 425.

It devolves upon the objectors to show that it is substantially unjust that judgment should be rendered against their

lands for these assessments. The burden is upon them to show wherein the injustice of the claim for judgment in this application consists. Starr & Curtis' Stat. chap. 120, sec. 191, p. 2087; *Chiniquy* v. *People,* 78 Ill. 570.

Unless the court finds that the tax itself is substantially unjust, the objections can not prevail. Revenue act, sec. 191.

As to the duty and right of the commissioners, in making this assessment, to consider their former assessments against the lands of the district with reference to benefits, and to give credits for amounts which were in excess of benefits, the law is thought to be clear. Const. art. 4, sec. 31; Drainage act of 1885, sec. 26; *Commissioners* v. *Kelsey,* 120 Ill. 482.

The recording of the resolution in the drainage record, and the filing of the tax list with the town clerk, is notice to all the tax-payers within the district, of the intended levy. The law requires no more than this. Drainage act of 1885, sec. 26.

Mr. FRANCIS M. WRIGHT, and Mr. L. A. SMYRES, for the appellees:

No special assessment can be made except through and by a classification, and when a levy is made, the statute is imperative that it shall be apportioned among the several tracts according to the acreage of each, and its figure of classification on the graduated scale. The commissioners have no power to apportion a levy on any other basis. Drainage act of 1885, sec. 26, p. 86.

This was not done, as the assessment was nullified by a fictitious credit of the same amount as regards part of the land. If the commissioners have this power in one case, they have it in all, which would render the classification of no binding force in any case.

In no other way than by following the provisions of the statute can the commissioners make an assessment, and no assessment can be made under the statute without a classification, a notice, and a tax-list in conformity with the classi-

fication. All of these are wanting in this case, therefore in the judgment of the county court there is no error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Drainage district No. 3, in the town of Rantoul, in Champaign county, was organized in 1882, under the Drainage act of July 1, 1879, which was then in force. At the time of organization, an assessment of $4854 was levied upon the lands in the district. The Drainage act of July 1, 1879, was amended and revised by the Drainage act in force July 1, 1885, and, after the last named act was in force, on the 23d of November, 1885, the drainage commissioners made a new classification of the lands in the district, pursuant to the authority conferred in that respect by the 21st section of the last named act. After this classification, and on the 21st of December, 1885, the commissioners levied a new assessment of $5000 upon the lands in the district, and on the 23d of November, 1887, the commissioners levied an additional assessment of $2000 upon the lands in the district, which was to be paid in two installments. At the time of making this levy, the commissioners credited certain lands with the full amount levied against them, for the purpose of relieving them entirely from the payment of any and every part of that levy. Appellees, among other land owners, not having paid the amounts assessed against their lands by the last named levy, application was made for judgment, of the county court of Champaign county, for such amounts. Appellees appeared and filed numerous objections, among which was the following:

"*Sixth*—The pretended credits by which certain lands in said district are totally relieved of all burdens of taxation in and by said tax list, was intended by the commissioners to burden the lands of the objectors beyond their just proportion, and is therefore, in law, a fraud, rendering said tax list a nullity. Objectors had no notice of levy of $2000, or of tax list, or the filing thereof, and therefore could not prosecute appeal.

Wherefore tax list is not binding, etc., and may be attacked collaterally," etc.

The court sustained the objection, and declined to give judgment in behalf of the district, as prayed, and this appeal is prosecuted to reverse that ruling.

If this record presented merely the question whether the fact that one person had not been assessed who ought to have been assessed, or that one person had failed to pay the amount assessed against his property, afforded a reason why others who were assessed should not pay the amounts assessed against their property, it may be that we should feel compelled to reverse the judgment below. But no such question is presented, and it is therefore immaterial how we might decide that question. The testimony of the commissioners is: "The credits entered upon the tax lists to the credit of all the lands where credits are given, as appears in said tax lists, were made, and each of them, at the time, and as a part of the same act and transaction as the assessment of lands in said tax lists. The credits so given do not represent any damages, or old ditch, or right of way, or any other thing of value received from the land owner or on the land so credited, but were entered up to said lands for the reason that we believed said lands so credited were not benefited. The lands so credited were assessed upon the figure of classification as heretofore made, and at the same time the credits were entered, for the purpose of relieving them of said assessment."

It is too obvious to need discussion, that the levying of an amount, and in the same instant, and as a part of the same act, giving credit for it as a mere gratuity, is precisely the same as not levying it, for the amount that will thus be left to be collected from other property in the district must be precisely the same in the one case as in the other. It is the substantive right, and not the mere matter of form, that must be considered. The question presented, therefore, is, whether the commissioners can levy an assessment upon a part, only, of

the lands in the district, in disregard of their former assessment of benefits and classification, merely because they may, at the time of the levy, be of the opinion that the lands omitted from the levy are, in fact, not benefited.

It is, among other things, provided in section 21 of the act in force July 1, 1885, that "in districts heretofore formed, which have made one or more levy of taxes, and a new levy is required, * * * if the commissioners believe, from experience and results, that the former assessment was not fairly adjusted on the several tracts of land according to benefits, then the commissioners shall disregard the proportion of the former assessment, and make the new classification in accordance with such proportions as should have been made originally." In every classification of lands in the district it is apparent that each land owner has a vital interest, and in order that he may have an opportunity to protect that interest, the 23d section of the act in force July 1, 1887, provides that he shall have notice of the "time when and the place where" the commissioners "will meet to hear any and all objections that may be made to the classification." The 24th section requires that the commissioners "shall hear whatever objections may be urged by any person interested, and if satisfied that any injustice has been done in the classification of the several tracts of land, or any of them, they shall correct the same in accordance with what is right." And "any person appearing and urging objections, who is not satisfied with the decision of the commissioners, may appeal from their decision to three supervisors."

We must therefore assume that the classification of November, 1885, was correct, and that it was satisfactory to all the parties affected by it. It might undoubtedly happen, that by reason of changes in conditions, what in 1885 appeared to be a benefit may now be demonstrated to be not a benefit; but it is manifest that this is not a question in which a few, only, of the land owners of the district are interested, but that it affects every land owner, for a given amount having to be raised, just

in proportion as lands are released from the obligation of its payment must the amount be increased on those that are not released.

No provision of the law authorizing commissioners to release lands within the district from the payment of their proportion of the assessment, based on the last classification, is pointed out or claimed to exist, and it is clear the existence of such a power would practically nullify the provisions of the statute to which we have referred, for of what avail can it be to a party that he is allowed to contest a classification, if the commissioners may, at their pleasure, disregard such classification? Both the letter and the spirit of this statute clearly require that the burdens of the district shall be apportioned on the basis of a classification of lands in the district, which each land owner had an opportunity to contest. An assessment, then, levied, as was this, in violation of the act under which, alone, it is assumed to be authorized, is void, and can not be collected. *City of Nashville* v. *Weiser et al.* 54 Ill. 245; Dillon on Mun. Corp. (1st ed.) sec. 610, and authorities cited in note 1.

The judgment is affirmed.

*Judgment affirmed.*