# IN RE GREYBULL VALLEY IRRIGATION DISTRICT, DONOVAN ET AL., COM'RS. OF IRR. DIST., v. OWEN, ET AL.

(No. 1964; February 25, 1936; 54 Pac. (2d) 808)

For the appellants there was a brief by *Milward L. Simpson* of Cody and *Harry B. Henderson, Jr.* of Cheyenne and oral arguments by Messrs. *Simpson* and *Henderson.*

398

For the respondents, there was a brief and oral argument by *Ernest J. Goppert* of Cody.

KIMBALL, Chief Justice.

The appeal is by 44 owners of lands in the Greybull Valley Irrigation District who challenge an order of the district court of Big Horn County changing assessments previously made against the lands in the district and authorizing the commissioners of the district to enter into a contract with the Federal Emergency Administration of Public Works for the construction of the district irrigation works with funds loaned and granted by the United States. The case has been before the court on preliminary motions, 52 P. (2d) 410.

The commissioners of the district initiated the proceeding by filing a petition which shows the following facts: The district was organized in 1920 under an act of that year which with some amendments is now sections 122-701 to 122-756, R. S. 1931. The commissioners' report, as contemplated by section 122-714, filed in May, 1921, showed that the district contained 85,119 acres of land of which 57,560 acres were irrigable; that the total of the assessments of benefits was $2,-641,170, and the assessments for cost of construction were $33\frac{1}{3}$ per cent of the assessments of benefits. The report was confirmed by the district court on June 21, 1921, by an order that authorized the commissioners to proceed with construction of proposed irrigation works according to the plan outlined in their report, and to pay the cost of construction from the proceeds of bonds authorized to be issued in the total amount of $845.000. The works were not constructed because the bonds could not be sold.

The petition further shows that on April 11, 1935,

the commissioners signed on behalf of the district an agreement which contemplates that under the National Industrial Recovery Act, through the Federal Emergency Administration of Public Works, the United States will lend and grant to the district not to exceed $1,108,000, to pay for the construction of the irrigation works under the supervision of the Administrator of Public Works. Of the amount so to be advanced, not to exceed $845,000 would be a loan evidenced by bonds of the district, and not to exceed $315,000 would be a grant. The agreement made it necessary that the district obtain from the district court an order satisfactory to the counsel for the Administrator of Public Works, "assessing total benefits available for debt service on the bonds . . . at not less than the amount heretofore fixed and set under date of June 21, 1921 (namely: approximately $2,643,000) and fixing assessments for construction costs . . . in an amount not less than $1,108,000."

The petition alleges that the lands in the district will be benefited in an amount not less than the amount theretofore fixed, without deduction for any assessments theretofore made or paid, and that the assessments of benefits as theretofore made "should be reinstated, reconfirmed and reassessed against each separate tract . . . in an amount equal to that heretofore fixed and determined" by previous orders. (The reference to assessments theretofore "made or paid" is not explained in the petition, but the evidence shows that $60,000, or more, had been spent by the district for services of engineers, attorneys, etc.)

The petition then alleges that the estimated cost of construction is $1,108,000, and that it will be necessary to increase the assessments for cost of construction from 33⅓ percent to 42 per cent of the assessments of benefits. The petition contains an itemized statement of the assessments, showing the assessments of bene-

fits unchanged, and the assessments for cost of construction increased to 42 per cent of the benefits.

The prayer of the petition was that the assessments be revised, modified, changed, and amended as set out in the petition; that the contract with the United States, signed by the commissioners April 11, 1935, be approved, and the issue of bonds, as provided in the contract, authorized.

The statute (§ 122-720) provides that the order of the district court confirming the report of the district commissioners "shall be final and conclusive" unless appealed from. But under section 122-721 the order may "be revised, modified or changed in whole or in part, on petition of the commissioners, after such notice as the court may require to parties interested." In this case, on the filing of the petition, April 27, 1935, the court ordered notice to be given by publication and mailing of copies of an order which stated the object of the petition, and set the time for filing and for hearing objections. The published order gave notice that the petition prayed for "confirmation, approval and reinstatement by this court of the assessment for benefits in the full amount, without deduction for any payments heretofore made thereon, of each of the several assessments for benefits against each separate lot, tract, parcel, or easement of land, heretofore assessed for benefits and construction" within the district, and that it prayed for an increase in the "assessments for construction," stating the proposed increase in assessments for cost of construction as contained in the petition.

The published notice required objections to be filed by May 25, and set the hearing for June 1. Objections were filed by a number of parties, some of whom were interested in several tracts of affected lands. About 70 of the objectors, including the 44 appellants, filed joint objections, and one of the appellants assuming to speak

for all who joined in his objections filed a motion and affidavit for a change of judge on the ground that Judge Metz, the judge of the court, was prejudiced against the objectors. The objections of the other parties, about 45, are not in the record.

The record contains an order, dated July 9, filed July 11 and entered July 26, from which it appears that Judge Metz disposed of all objections, except those in which appellants joined, after a hearing or hearings evidently had some time between June 19 and July 5. The order recites the filing of objections by the various parties; the default of some who failed to appear at the hearing; the appearance and submission of evidence by some 42 objectors, and withdrawal or waiver of objections by two others. It is then recited that the commissioners of the district had made adjustments with 35 objectors, and that in order to carry out the adjustments it was necessary that an amendment be made of the petition filed April 27, 1935, and that said amendment had been presented and should be approved and confirmed. It is then ordered and adjudged that the amendment be filed, and that it had been filed, to carry out the court's findings and determination of the objections of the 35 parties with whom adjustments had been made, and of 7 others. It is further ordered that the objections of said 42 parties be over-ruled except in so far as they are approved and adopted, as shown by the amendment of the petition. It is then ordered that the petition filed April 27, as amended July 9, and the objections of the parties including appellants, who had moved for a change of judge, be referred to Judge Murane, for final hearing and determination.

The amended petition, filed July 9, referred to in the above order, contains a revised assessment roll showing that the assessment roll of June 21, 1921, as changed by increasing the assessments for cost of con-

struction and with such change reported to the court by the petition of April 27, 1935, has been further changed, evidently to carry out the findings and adjustments mentioned in the order dated July 9, 1935. These last changes reduce the total assessments of benefits from $2,641,170 to $2,484,180 with a corresponding reduction of assessments for cost of construction from $1,109,291 to $1,043,356. From a rather inadequate checking, it appears that the deductions in assessments apply to some 70 tracts most or all of which are owned by the 42 parties whose objections were settled by the order dated July 9.

Appellants' objections were heard before Judge Murane on July 5. It will not be necessary to review the evidence taken at the hearing. Many of appellants' contentions need not be considered. Their objections were overruled by the order appealed from, dated July 16, filed July 20, and entered July 30, which, among other things, declared that the assessments of benefits to the district lands as fixed by the order of June 21, 1921, shall not be changed "excepting only for the decreases made pursuant to the order of this court dated July 9, 1935," and confirmed the assessments as shown on the amended assessment roll contained in the amended petition filed on the last mentioned date.

We think the order must be reversed because reduction in the assessments of benefits was in the circumstances not only irregular and erroneous but perhaps void for want of jurisdiction. The result of a reduction in the assessment of benefits to a part of the lands in the district is an increase in the burden on the other lands. See People ex rel. Davidson v. Cole, 128 Ill. 158, 21 N. E. 6. Such a reduction cannot be upheld in a proceeding initiated by a petition and notice which state that assessments of benefits will not be changed.

We have considered whether the reduction in the assessments of benefits can be disregarded because *de*

*minimis non curat lex,* and have come to the conclusion that it cannot. The reduction is about 6 per cent of the total assessments, and on assessments for construction cost amounts to more than a dollar for each acre of irrigable land in the district.

Appellants contend that assessments of benefits made in 1921 could not be a proper basis for assessments for the cost of constructing a project fourteen years later. We assume that mere lapse of time would not necessarily show that the assessment of benefits should be changed. But there can be no doubt that during a fourteen year period there may be such a change in conditions that it would be proper to make re-assessment of the benefits that will accrue to the lands under the new conditions. In this case, it is probable that many of the land owners in the district believed that construction plans had been abandoned. There had been a considerable sentiment favorable to a dissolution of the district. Some of the land owners had constructed their own reservoirs. We may assume that the court must have found a material change in conditions to justify the reduction of assessments as shown by the assessment roll filed July 9. The lands had been charged with $60.000 spent by the district on preliminary matters, and the refusal to credit this amount on the assessments has the effect of increasing the assessments of benefits as fixed in 1921. Although it is claimed that the project now proposed is the same as the one proposed in 1921, the estimated cost of construction, as reported in the petition filed April 27, 1935, is more than $227,000 above the estimate of 1921.

In view of the time that has elapsed since the original assessment, and of the admitted change in conditions that apparently requires a reduction in some of the assessments, we think it advisable that future proceedings should include a general re-assesment that

should be reported to the court for confirmation after proper notice.

The order appealed from will be reversed, and the proceeding remanded to the district court.

BLUME and RINER, JJ., concur.